DREW, Chief Justice.
This appeal controverts a final decree of the Circuit Court for Leon County validating an issue of $75,000,000 Higher Education Bonds, Series A, by the appellee State Board of Education of Florida, pursuant to *163 Section 19,[1] Article XII, of the Florida Constitution. That amendment creates a trust fund from proceeds of the gross receipts tax levied under Chapter 203, Florida Statutes, F.S.A., and authorizes bond issues against this fund by the State Board of Education with limitation, among others, to the amount of seventy-five million dollars during the biennium 1963-65 “for the purpose of obtaining funds for * * * capital outlay projects theretofore authorized by the legislature” in connection with institutions of higher education and junior colleges in Florida. By Chapter 63-524, Laws of Florida, § 282.012, Florida Statutes, F.S.A., the Florida Legislature authorized expenditures for enumerated capital outlay projects in the sum of $35,980,246 for junior colleges in twenty-three specified counties, and $51,897,000 for various capital outlay purposes in the institutions of higher learning over the state.
The petition and exhibits filed by the ap-pellee Board of Education on February 27, 1964, for validation of these bonds under Chapter 75, Florida Statutes, F.S.A., show its adoption of a resolution on January 28, 1964, authorizing their issuance pursuant to request from the Board of Control for allocation of $45,000,000 and from the Boards of Public Instruction of seventeen named counties[2] for allocation of the aggregate sum of $30,000,000 for purposes described in the enabling legislation. The decree entered below consequent upon these proceedings sets forth in full the findings of the court with respect to the constitutional and statutory requirements for the issue, and concludes affirmatively for petitioner in all respects.[3]
*164 The first of the objections raised on this appeal is that the enabling act and the resolution of the appellee Board provide for the construction of projects in an aggregate amount which exceeds the $75,000,000 limitation imposed by the above amendment upon bond issues under its terms for the 1963-65 biennium. The answer, in brief, is that the constitution limits the anticipation of revenues by issuance of obligations secured by the fund but does not by this provision inhibit total authorized expenditures.
The limitation of Section 19, Art. XII, supra, is that “no such bonds or certificates shall be authorized or validated during any biennium in excess of fifty million dollars, except by two-thirds vote of the members elected to each house of the legislature; provided further that during the biennium 1963-65 seventy-five million dollars may be authorized and validated pursuant hereto.’[1] (Emphasis Supplied.) Section 282.012(2) (c) does authorize the respective boards “to select the projects to be realized” from the aggregate total of *165 $87,877,246 listed, but the initial paragraph of that subsection plainly authorizes all of the designated sums “to be expended for the enumerated authorized capital outlay projects from the * * * trust fund in the state treasury or from the proceeds of bonds or certificates payable from the * * * trust fund”. The resolution of the appel-lee Board authorizes realization of all rather than a selection of projects designated in the act, but there is clear compliance with the constitutional and statutory[4] mandate by the provision of the resolution that in no event shall more than $75,000,000 ($45,000,000 for institutions of higher learning and $30,000,000 for junior colleges) “of the proceeds of the bonds, herein authorized, be allocated to the payment of the cost of the capital outlay projects listed above.”
Appellant next controverts that portion of.the Board of Education resolution providing for the annual transfer to the State Board of Administration of the necessary moneys to meet the debt service requirements of the outstanding bonds. We think the resolution in this respect is fully consistent with the provisions of Section 19(a) and (d) that “[s]aid fund shall be administered by the State Board of Education, as now created and constituted by Section 3 of Article XII of the Constitution of Florida * * *,” and that “[t]he State Board of Administration shall be and is hereby constituted as the Fiscal Agent of the State Board to perform such duties and assume such responsibilities under this Amendment as shall be agreed upon * * *."[5]
The final point made in contest of validation is that the authorizing resolution of the Board contains a provision permitting and controlling the terms for issuance of additional parity obligations subsequent to the Series A Bonds here involved, although the enabling act, § 282.012, supra, makes no reference to such future issues. The constitutional amendment, however, confers upon the Board directly the authority to make provision for additional parity issues, subject to the requirement that this power to issue bonds shall be exercised only to obtain funds for “capital outlay projects theretofore authorized by the legislature * and that other conditions specified in paragraph (b) of Section 19, not here in controversy, shall be met. The plan set forth does not, in our opinion, infringe the constitutional prescription.[6]
The decree is affirmed.
THOMAS, ROBERTS, THORNAL, O’CONNELL, CALDWELL and ERVIN, JJ., concur.

. Adopted by referendum election on November 5, 1963.

. Bay, Brevard, Broward, Columbia, Dade, Escambia, Jackson, Lake, Lee, Madison, Manatee, Marion, Palm Beach, Pinellas, Putnam, St. Lucie and Volusia.

. Final Decree, R. 200:
“5. * * * Such Resolution [of the Board of Education] provides that the Bonds shall be dated May 1, 1964, shall be in the denomination of $5,000 each, shall bear interest at not exceeding four and one-half per centum (4%%) per annum, payable semi-annually on November 1 and May 1 of each year, shall mature in annual installments on May 1 of each of the years 1965 to 1994, both inclusive, in the amounts provided in such Resolution, all of which appears and is more fully set forth in the certified copy of the Resolution heretofore filed herein. Such Resolution complies fully with the requirements of the Higher Education Amendment and the Act and is legal and valid in all respects.
“6. The average annual amount of the revenues derived from the gross receipts taxes during the immediate preceding two fiscal years, as set forth in the certificates of the Comptroller of Florida filed herein, is the sum of $9,652,881.68 and such sum is less than the amount of the revenues derived from the gross receipts taxes during the immediately preceding fiscal year, to-wit: 1962-1963.
“The amount of Bonds authorized to be issued pursuant to the Resolution does not exceed seventy-five per centum (75%) of the amount of Bonds which can be serviced as to both principal and interest from the gross receipts taxes accruing thereafter to the State Board under the provisions of the Higher Education Amendment based upon such average annual amount of the revenues derived from the gross receipts taxes during the immediately preceding two fiscal years.
“7. The State Board has estimated that the sum of $10,900,000 will be derived from the gross receipts taxes during the calendar year 1964. The aggregate principal amount of such Bonds is not in excess of seven times such anticipated revenues of $10,900,000 to be derived from the gross receipts taxes for the calendar year 1964.
“8. The Bonds shall be payable as to both principal and interest solely from the gross receipts taxes, which are required to be deposited in the Institutions of Higher Learning and Junior Colleges Capital Outlay and Debt Service Trust Fund administered by the State Board, under the provisions of the Higher Education Amendment, in the manner provided in the Resolution. The holders of such Bonds shall have the right to require or compel the payment of the principal of and interest on such Bonds solely from the gross receipts taxes, pursuant to the provisions of the Higher *164 Education Amendment and such Resolution. However, no holder of such Bonds or the coupons appertaining thereto shall ever be entitled to require the payment of the principal of or interest on such Bonds from any other funds of the State of Florida, the State Board, the Board of Control or any political subdivision or agency of the State.
“9. Section 282.012, Florida Statutes, the same being Chapter 63-524, Laws of Florida, Acts of 1963 is not inconsistent with the provisions of Section 19, Article XII of the Constitution of Florida and is in all respects legal and valid.
“10. Due and proper notice addressed to the State of Florida, and the several taxpayers, property owners and citizens thereof and of Alachua, Bay, Brevard, Broward, Columbia, Dade, Escambia, Hillsborough, Jackson, Lake, Lee, Leon, Madison, Manatee, Marion, Orange, Palm Beach, Pinellas, Putnam, St. Lucie and Volusia Counties, including non-residents owning property or subject to taxation therein and all others having or claiming any right, title or interest in property to be affected by the issuance of such Bonds, hereinbefore described, was duly published by the Clerk of this Court in newspapers published and of general circulation in each respective county, once each week for at least three consecutive weeks, the first publication being at least 18 days prior to the date of said hearing, as required by law; all as will more fully appear from the affidavits of the publishers heretofore herein filed.
“11. No taxpayer, citizen or other person has intervened or made application to become a party to said proceedings for the purpose of interposing objections to the granting of the prayers as set forth in' said Petition as provided by law.
“12. The Answers of the State Attorneys of the First, Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Judicial Circuits of Florida, for and on behalf of the State of Florida, have been carefully considered by this Court. Such Answers show no cause why the prayers of the Petitioner should not he granted and disclosed no irregularity and illegality in the proceedings set forth in said petition and the objections contained in said Answers be and the same are hereby overruled and dismissed.
“13. This Court has found that all requirements of the Constitution and Laws of the State of Florida pertaining to the enabling act and proceedings in the above entitled matter have been strictly followed.
“NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:
“(a) The issuance of the Bonds by the State Board, as provided in the Resolution, is for a proper, public and legal purpose, and is fully authorized by the Higher Education Amendment and the Act.
“(b) The provisions contained in the Resolution for the payment of the Bonds and the interest thereon and all covenants contained therein are valid and enforceable and in full compliance with the Higher Education Amendment and the Act.
“(c) The gross receipts taxes, as here-inabove described, are fully pledged for the payment of the principal of and interest on the Bonds.
“(d) The Bonds, when issued, will be legal and valid obligations of the State Board payable solely from the gross receipts taxes in the manner provided in the Resolution.
“(e) The Bonds and all proceedings incident to the authorization thereof are hereby validated and confirmed.”

. See. 282.012(2) (e), “* * * of the proceeds of bonds or revenue certificates issued during the 1963-65 biennium under the provisions of Art. XU the state constitution not more than thirty million dollars shall be allocated to projects listed in paragraph (a) subsection (1) of this section and not more than forty five million dollars shall be allocated to projects listed in paragraph (b), subsection (1) of this section; provided further however that all projects listed in subsection (1) of this section which are in the 1963 general appropriations act shall be realized during the 1963-65 biennium.” (Emphasis Supplied.)

. State v. State Board of Administration, 157 Fla. 360, 25 So.2d 880; State ex rel. Hester v. State Board of Administration, 158 Fla. 567, 30 So.2d 350.

. Cf. Constans v. City of Delray Beach (Fla.1962), 138 So.2d 497; State v. Florida Development Comm. (Fla.1962), 143 So.2d 676; Klein v. City of New Smyrna Beach (Fla.1963), 152 So.2d 466.