**STATE OF FLORIDA v. SPECIAL ROAD AND BRIDGE DISTRICT NO. 9 OF POLK COUNTY, FLORIDA and THE BOARD OF COUNTY COMMISSIONERS OF POLK COUNTY, FLORIDA.**

13 So. (2nd) 801                                    January Term, 1943
May 21, 1943                                                    En Banc

*L. Grady Burton,* for appellant.
*Milton D. Wilson,* for appellees.

TERRELL, J.:

On December 8, 1942, the Board of County Commissioners of Polk County adopted a resolution authorizing an issue of refunding bonds for special Road and Bridge District Number 9 of that county. A suit to validate these bonds was instituted on the same date. The State answered the petition to validate challenging the authority of the county commissioners to issue refunding bonds because of the adoption of Section 16 of Article IX, Constitution of Florida. On final hearing January 19, 1943, the chancellor entered a final decree validating the refunding bonds. This appeal is from the final decree.

The question presented may be stated as follows: Did Section 16, Article IX, Constitution of Florida, adopted November 3, 1942, effective January 1, 1943, withdraw completely from Boards of County Commissioners the power to

issue and dispose of refunding bonds for road and bridge purposes and vest that power in the State Board of Administration, or did it leave a residue of such power in Boards of County Commissioners?

Section 16 of Article IX first requires that for fifty years beginning January 1, 1943, the proceeds of two cents per gallon of the tax levied upon gasoline and other like products of petroleum shall be placed to the credit of the State Roads Distribution Fund. Section 16(b) in so far as pertinent to the question stated defines the powers of the State Board of Administration as follows:

"The Governor as chairman, the State Treasurer, and the State Comptroller shall constitute a body corporate to be known as 'State Board of Administration,' which Board shall succeed to all the power, control and authority of the statutory Board of Administration. Said Board shall have, in addition to such powers as may be conferred upon it by law, the management, control and supervision of the proceeds of said two (2c) cents of said taxes and all moneys and other assets which on the effective date of this amendment are applicable or may become applicable to the bonds of the several counties of this State, or any special road and bridge district, or other special taxing district thereof, issued prior to July 1, 1931, for road and bridge purposes. The word 'bonds' as used herein shall include bonds, time warrants, notes and other forms of indebtedness isued for road and bridge purposes by any county or special road and bridge district or other special taxing district, outstanding on July 1, 1931, or any refunding issues thereof. Said Board shall have the statutory powers of Boards of County Commissioners and Bond Trustees and of any other Authority of special road and bridge districts, and other special taxing districts thereof with regard to said bonds, (except that the power to levy ad valorem taxes is expressly withheld from said Board) and shall take over all papers, documents and records concerning the same. Said Board shall have the power from time to time to issue refunding bonds to mature within the said fifty (50) year period, for any of said outstanding bonds or interest thereon, and to secure them by a

pledge of anticipated receipts from such gasoline or other fuel taxes to be distributed to such county as herein provided, but not at a greater rate of interest than said bonds now bear; and to issue, sell or exchange on behalf of any county or unit for the sole purpose of retiring said bonds issued by such county, or special road and bridge district, or other special taxing district thereof, gasoline or other fuel tax anticipation certificates bearing interest at not more than three (3) per cent per annum in such denominations and maturing at such time within the fifty (50) year period as the Board may determine."

To those familiar with the historical background of this amendment, it does not require a top flight exegete to expound its function. It incorporated the State Board of Administration a constitutional body made it the fiscal agent of the counties, and vested in it the sole authority to take over all road and bridge bonds outstanding as of July 1, 1931, to liquidate as they fall due and to issue refunding bonds as the law provides when reason and necessity require. It completely withdrew that power from the County Commissioners of the several counties.

The quoted provisions delegating to the State Board of Administration the statutory powers of boards of county commissioners and boards of bond trustees and of any other authority of special road and bridge districts and other special taxing districts with regard to bonds except the power to levy ad valorem taxes can when considered with other provisions of the amendment have no other effect.

The amendment by its terms did not become effective until January 1, 1943. So the power of the boards of county commissioners to liquidate outstanding bonds and issue refunding bonds was not affected until that date but on that date, such power ceased and they were left with no power affecting them except that of imposing ad valorem taxes to service them. Brief of counsel for the County contends that the amendment has the effect of relieving ad valorem taxes from the burden of servicing the outstanding and the refunding bonds and that the gasoline tax allocated to the State Board of Administration is now their only guaranty.

We are impelled to reject this contention. Instances may arise in which the excise tax is not ample to protect the security of the bonds. When they were issued, they were protected by the credit of the county or the district; this included ad valorem taxes and being so the original and refunding bonds are protected by the contract clause of the Federal Constitution which the Constitution of Florida cannot relieve against. American Can Co. v. City of Tampa, filed April 30, 1943, not yet reported. There may be cases in which the gasoline tax will be ample to service the bonds and if so the ad valorem taxes should not be called but if within the discretion of the State Board of Administration, it becomes necessary to service original or refunding bonds with ad valorem taxes, it may so find and certify to the Board of County Commissioners the millage required and it will be the duty of the County Commissioners to impose the millage so certified on all the taxable property of the county. The State Board of Administration is given broad discretion in handling county road bonded indebtedness. It may issue refunding bonds or it may issue gasoline or other fuel tax anticipation certificates but there is no relief from ad valorem taxes unless the gasoline tax is ample.

In fine, Section 16, Article IX, created a state agency to perform a function heretofore performed by the sixty-seven counties. Such an agency had been in existence under Chapter 14486, Acts of 1929, and as created by Section 16, Article IX very largely derives its powers from that Act. The constitutional amendment transfers to it the powers of county commissioners as defined in Chapter 15772, Acts of 1931, but otherwise it is clothed with few new powers. The primary purpose of these acts and the amendment was to recognize the state's obligation to the counties and special road and bridge districts for contributing to an important state purpose, to reimburse them with state funds for their expenditure and to set up a strong central agency to effectively and economically do so.

In conferring on the State Board of Administration under the Constitution "all the power, control, and authority of the statutory board of administration," including the statu-

tory powers of boards of county commissioners and bond trustees relating to bonds, their papers, documents, and records and then vesting it with full control of and supervision of the proceeds of two cents of the gas tax and all moneys and other assets applicable to payment of the bonds relieved the county commissioners entirely of their function and lodged it in the State Board of Administration. Refunding bonds issued by the latter board amount to nothing more than an extension of the original obligation protected by the same security including the pledge of gasoline taxes. If the State Board of Administration sees fit to issue tax anticipation certificates, they are protected solely by gasoline taxes.

But the county contends that since Section 16, Article IX, did not repeal Section 6, Article IX, the counties are still resident of the constitutional power to issue refunding bonds.

Casual consideration of the purpose of Sections 6 and 16 completely refutes this contention. In so far as the purpose of Section 6 affects the question at hand, it is sufficient to say that the reason for that amendment was to require an approving vote of a majority of the freeholders before any county, district, or municipality could issue bonds. The amendment in hand only affects bonds issued for road and bridge district purposes and refunds thereof and as to them, it merely goes to the authority from which they emanate. They must now be issued by the State Board of Administration instead of the County Commissioners. The authority to issue other classes of bonds contemplated by Section 6 is in no wise affected by Section 16. The powers, duties, and compensation of county commissioners are fixed by statute and the Legislature may change them at any time. State ex rel. Buford v. Fearnside, 87 Fla. 349, 100 So. 256. In this case their duties as to a certain class of bonds was transferred to another Board by the people.

The Legislature of 1941 which submitted Section 16, Article IX to the people for ratification also enacted Chapters 20300, 20301, 20302, 20303, 20648, and 20946, all of which are amendments to Chapter 14486, Acts of 1929, and Chapter 15659, Acts of 1931, creating the State Board of Administra-

tion and defining its powers. These acts were passed in anticipation of the adoption of Section 16, Article IX, and clothed the State Board of Administration with power to handle funds in their hands for the benefit of the counties. The purpose of these acts supports and squares with the conclusion we reach here. Any other conclusion would create no end of confusion and make of Section 16, Article IX, a useless gesture.

It follows that the power of the State Board of Administration to issue refunding bonds and retire outstanding bonds after January 1, 1943, is exclusive, that its refunding bonds when issued are secured by the same pledge as the original bonds in addition to the gasoline tax and do not require an approving vote of the freeholders and that withholding from the State Board of Administration the power to impose ad valorem taxes does not negative the idea that it may issue refunding bonds secured by such taxes.

The final decree appealed from is therefore reversed without prejudice to any application on the part of the Board of Administration for substitution as party plaintiff in the suit now pending in Polk County, and that therefore the cause proceed in accordance with law and the views here expressed.

Reversed with directions.

BUFORD, C. J., CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.

BROWN, J., concurs in the conclusion reached.