403 So.2d 520 (1981)
Ernest J. JOHNSON, Appellant,
v.
SCHOOL BOARD OF PALM BEACH COUNTY, Florida, Appellee.
No. YY-286.
District Court of Appeal of Florida, First District.
September 2, 1981.
*522 John J. Chamblee, Jr., Tampa, for appellant.
Richard L. Oftedal, West Palm Beach, for appellee.
OWEN, WILLIAM C., JR. (Retired), Associate Judge.
Appellant, a tenured classroom teacher, employed by appellee, School Board of Palm Beach County, seeks review of the final order of the State Board of Education upholding appellant's suspension and termination by appellee.
On December 18, 1978, appellant assaulted a male high school student during the course of a regular school day. On December 22, 1978, without the benefit of prior notice or a hearing, appellant received a letter from the Superintendent of Schools of Palm Beach County dated the same date advising that appellant was suspended without pay effective immediately. The letter set forth various grounds upon which the Superintendent had suspended appellant. It also advised appellant that the Superintendent would recommend to the School Board that it ratify the suspension without pay and that it terminate appellant's employment on January 17, 1979. Finally, the letter stated that the recommendations would be made at a meeting of the School Board to be held on January 17, 1979, the time and place being specifically designated.
On January 17, 1979, the School Board conducted a public meeting at which time the Superintendent presented his recommendation for the appellant's suspension without pay and for his termination. The School Board adopted the Superintendent's recommendation to suspend the appellant without pay retroactive to December 22, 1978. The record does not reflect whether appellant was permitted an opportunity to rebut the charges against him at the hearing conducted before the School Board on January 17, 1979, but for reasons hereafter discussed this factual void presents no hurdle.
On January 30, 1979, the Superintendent of Schools of Palm Beach County filed with the School Board a formal petition for termination of appellant's continuing contract of employment, a hearing on which was noticed for April 16, 1979. After the hearing, and in due course, the School Board *523 issued its final order dismissing appellant on his contract of employment. Appellant's appeal to the State Board of Education resulted in an order (here under review) sustaining the dismissal order of the School Board. No challenge is made here to the order of dismissal, but only to the periods of suspension without pay.
Appellant's first point questions whether the Superintendent's suspension of appellant's pay on December 22, 1978, and the School Board's subsequent retroactive approval of the suspension violated appellant's due process rights and renders Sections 230.33(7)(h),[1] 231.36(6),[2] and 230.23(5)(g)[3] facially unconstitutional or unconstitutional as applied. Appellant's second point is whether the School Board's prospective suspension of appellant's pay up to the date of termination hearing violated state and federal constitutional due process guarantees. Able counsel for both parties have, both in briefs and in oral argument before the Court, materially aided the Court in resolving these issues.
Appellant's first point is resolved by us without the necessity of considering the constitutional issues.
The superintendent of a district school system has the responsibility for the day-to-day administration of the district schools as the executive officer of the district school board.[4] Whenever he has good reason to believe that a member of the instructional staff or other school employee has been guilty of conduct justifying suspension or dismissal as set forth in Section 231.36(6), Florida Statutes, the superintendent has the power and duty under the emergency provisions of Section 230.33(7)(h), Florida Statutes, to immediately suspend such member of the instructional staff or other school employee. However, we perceive that the legislature, in granting this power to the superintendent, intended it for use only in emergencies so that the suspended teacher [or other employee] may be immediately *524 removed from his or her position pending school board action. The suspension is limited in duration to the period extending to and including the day of the next regular or special meeting of the school board, a provision which clearly contemplates that at such meeting it becomes the duty of the school board to take action on the matter. The notice of suspension served on the suspended teacher [or other employee] should include notification of the charges made against him as well as the date, time, and place of such next regular or special meeting of the school board. The power of the school board to suspend (by virtue of Section 230.23(5)(g), Florida Statutes) is exercised in the manner prescribed in Section 231.36(6), Florida Statutes. This latter statute, which expressly authorizes the school board to suspend any employee without pay, is the only statutory reference to the power to suspend without pay.
Considering these several statutes in pari materia, we conclude that while the superintendent may suspend in emergencies, the legislature intended to reserve to the school board the ability to suspend without pay. Furthermore, we find no legislative authority or intent that the school board, in taking action under Section 231.36(6), Florida Statutes, to suspend an employee without pay, may make such suspension without pay retroactive to the date of suspension by the superintendent.[5] Otherwise, the school board could by such action, in practical effect, grant to the superintendent the power which we now say he does not possess, i.e., the power to suspend without pay.
We conclude that when the superintendent notified appellant on December 22, 1978, of his suspension without pay effective immediately, the superintendent was within his authority under the emergency power granted by Section 230.33(7)(h), Florida Statutes, to suspend appellant, but was without authority to make such suspension without pay. When the school board met on January 17, 1979, it had before it charges against appellant sufficient under Section 231.36(6), Florida Statutes, to empower the school board to suspend appellant without pay, but such suspension without pay should have been prospective only and not applied retroactively to the time of the emergency suspension by the superintendent. Appellant is therefore entitled to receive his full pay from December 22, 1978, through January 17, 1979, plus all other monetary benefits attending his employment for that period.
Appellant's second point, concerning the School Board's prospective suspension of appellant's pay pending termination hearing, does require that we consider constitutional issues.
As noted earlier in this opinion, appellant does not challenge either his dismissal or the due process sufficiency of the termination hearing resulting in that dismissal. Rather, he says his suspension without pay from January 17, 1979, to the commencement of the termination hearing on April 16, 1979, was itself a deprivation of a "property interest" requiring constitutional due process safeguards.
Without question appellant, by virtue of his tenure, had a legitimate claim of entitlement to continued employment absent sufficient cause for his discharge, and therefore had a property interest in his continued employment of which he could not be deprived without procedural due process meeting constitutional standards.[6] But termination is one thing; mere temporary suspension or interruption of pay is quite another. The question of whether the *525 latter rises to the level of a protected property right, and if so, the extent to which it requires protection, must be determined by a balancing of the competing interests.
This matter is discussed by Mr. Justice Powell in a concurring opinion in Arnett v. Kennedy, infra, wherein he states, at 416 U.S. 167, 94 S.Ct. at 1651:
"Having determined that the constitutional guarantee of procedural due process applies to ... discharge from public employment, the question arises whether an evidentiary hearing, including the right to present favorable witnesses and to confront and examine adverse witnesses, must be accorded before removal. The resolution of this issue depends on a balancing process in which the Government's interest in expeditious removal of an unsatisfactory employee is weighed against the interest of the affected employee in continued public employment. Goldberg v. Kelly, supra, at 263-266, 25 L.Ed.2d 287. As the Court stated in Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895, 6 L.Ed.2d 1230, 81 S.Ct. 1743 (1961), `consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'"
Here the school board has an interest in eliminating, as soon as possible, the payment of wages to misbehaving or unproductive employees, and in avoiding the time, expense and unnecessary disruption of its other affairs caused by repetitive hearings were it to hold a presuspension hearing in addition to a termination hearing. Thus, the school board's interest in being able to act expeditiously in suspending an employee without pay is substantial. The employee's countervailing interest is the continuation of his pay pending an evidentiary hearing. Since the employee would be reinstated and awarded back pay if he prevails on the merits of his claim, his actual injury would consist of a temporary interruption of income during the interim. While this is no small loss, we decide, on balance (as did Mr. Justice Powell in Arnett v. Kennedy), that a prior evidentiary hearing is not required.[7] To say that before a tenured teacher may be suspended without pay, the teacher is entitled to a pre-suspension hearing with all procedural due process safeguards when the teacher is entitled to such a hearing prior to termination is to create a practical absurdity, i.e., dual and duplicate hearings.
The district school board is an "agency" within the purview of the Administrative Procedures Act, Chapter 120, Florida Statutes. Witgenstein v. School Board of Leon County, 347 So.2d 1069 (Fla. 1st DCA 1977). When the school board, acting pursuant to Section 231.36(6), Florida Statutes, suspends a member of the instructional staff without pay, the school board must with reasonable dispatch initiate and diligently prosecute proceedings under the appropriate subsection of Section 120.57, Florida Statutes, to the end that the risk of wrongful suspension be minimized.[8]
*526 We hold that when a district school board, acting pursuant to the powers granted it in Section 230.23(5)(g), Florida Statutes, and Section 231.36(6), Florida Statutes, suspends a tenured member of the instructional staff without pay pending a trial-type termination hearing to be held with reasonable diligence and dispatch after the suspension and in accordance with the provisions of Section 120.57, Florida Statutes, since the employee is entitled to immediate reinstatement with back pay in the event the charges are not sustained, the suspension without pay is not a sufficient property interest as to require a pre-suspension evidentiary hearing.
Our holding is supported by what we believe to be the plurality view of the Supreme Court in Arnett v. Kennedy, 416 U.S. 132, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). It is also in accord with a three judge decision of the United States District Court for the Southern District of Florida in the case of Joshua A. Logan, Plaintiff v. School Board of Palm Beach County, Florida, et al., Case No. WPB-74-3086-CIV-CF, wherein an argument identical to appellant's was raised and rejected in a unpublished opinion dated March 24, 1976, and authored by Chief Judge Charles B. Fulton. In that case the Court stated:
"The plaintiff claims further that if Florida Statute 231.36(6) is not unconstitutional on its face, that it is unconstitutional as applied because it provides for the suspension without pay, pending a hearing, of a teacher charged with, inter alia, incompetency or willful neglect of duty.
The law is settled that the opportunity for a hearing must be provided prior to depriving an individual of a property right, absent an extraordinary situation. Boddie v. Connecticut, 401 U.S. 371, [91 S.Ct. 780, 28 L.Ed.2d 113] (1971). Professors dismissed from an office held under tenure provisions have been held to have a `property' interest in the continued receipt of benefits. Connell v. Higginbotham, 403 U.S. 207 [91 S.Ct. 1772, 29 L.Ed.2d 418] (1971); Slochower v. Board of Education, 350 U.S. 551, [76 S.Ct. 637, 100 L.Ed. 676] (1956). The plaintiff in the instant case, however, was not deprived of a property right prior to a hearing. The plaintiff was, instead, suspended as provided for by Florida Statute 231.36(6), his suspension lasting until a hearing could be scheduled. The plaintiff was afforded a full adversary hearing prior to his termination, and had the charges against him not been sustained, he would have been entitled to reinstatement and back pay, under the statute in question. It is apparent, then, that Florida Statute 231.36(6) is not unconstitutional insofar as it provides for the suspension without pay of a teacher charged with incompetency or willful neglect of duty, because such a suspension does not involve the deprivation of a property right without a hearing."
Appellant relies heavily upon the case of Thurston v. Dekel, 531 F.2d 1264 (5th Cir.1976), and particularly the portion of the opinion in which the court stated, at page 1273:
"Arnett and Davis [v. Vandiver, 494 F.2d 830] guide us to focus on procedures which will minimize the risk of improper termination associated with any dismissal process. Where a governmental employer chooses to postpone the opportunity of a nonprobationary employee to secure a full-evidentiary hearing until after dismissal, risk reducing procedures must be accorded. These must include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision." (footnotes omitted)
The Thurston case is clearly distinguishable. There the court approved the trial court's conclusion that the suspension process [for civil service employees of the City of Jacksonville] was no more than a facade, and in reality, suspension was the functional equivalent of permanent discharge "subject *527 to the condition subsequent that an employee may be reinstated with back pay upon successful appeal." However, suspension by a district school board is not the functional equivalent of a permanent discharge subject to the employee being reinstated with pay upon successful appeal but is a true suspension to be followed with reasonable diligence by a full trial-type hearing with all constitutional due process safeguards wherein the burden of sustaining the charges is on the employer, the failure of which entitles the employee to immediate reinstatement with back pay. Furthermore, the written notice which appellant received from the superintendent dated December 22, 1978, was adequate to minimize the risk of improper suspension without pay, for though appellant asserts that he was given no opportunity for being heard at the meeting of January 17, 1979, we have no doubt that had the charges been totally groundless he could have and would have found the means to bring that fact to the Board's attention, by letter if no other means were available.
Appellant also relies heavily upon a decision from the United States District Court for the Middle District of Florida, Ocala Division, Clinton Baker, et al. v. The School Board of Marion County, Florida, et al., 487 F. Supp. 380 (D.C.Fla.), in which, in an opinion issued October 7, 1980, by Senior United States Judge Charles R. Scott, the court, while exercising the doctrine of abstention, indicated the view that Section 231.36(6), Florida Statutes, was unconstitutional due to its failure to provide for pre-suspension notice and hearing. While the court noted that the procedural due process void would be filled if either Section 120.57(1) or Section 120.57(2) proceedings were provided prior to suspension, it expressed an uncertainty as to whether a school board's suspension of an employee without pay pending a full evidentiary hearing would constitute a determination of "the substantial interests of a party", as that term is used in Section 120.57, Florida statutes. While the termination of an employee would be a proceeding affecting the substantial interest of a party,[9] requiring the agency action to be in accordance with Section 120.57, Florida Statutes (as we have, indeed, indicated earlier), we conclude that suspension without pay pending a full evidentiary termination hearing is not such a proceeding. Thus, compliance with Section 120.57, Florida Statutes, is not a prerequisite to Board suspension of an employee without pay pursuant to Section 231.36(6), Florida Statutes.
Upon remand, the final agency order will be modified to provide for appellant to receive his full pay from December 22, 1978, through January 17, 1979, plus all other monetary benefits attending his employment for that period. In all other respects, the final agency order is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
THOMPSON, J., concurs.
ERVIN, J., concurs and dissents.
ERVIN, Judge, concurring and dissenting.
Although I concur without reservation regarding the affirmance of the school board's prospective suspension of appellant without pay pending the final termination hearing, I must respectfully dissent to the majority's reversal of the board's subsequent retroactive approval of the suspension without pay. I consider, under the circumstances, that the board may lawfully delegate the power to the superintendent to suspend an instructional employee without pay, and it may also retroactively ratify a delegable responsibility.
Under the broad statutory scheme, the school boards are authorized to "operate, control and supervise all free public schools in their respective districts... ." § 230.03(2), Fla. Stat. (1979). The superintendent acts "as the secretary and the executive officer of the school board, ... ." § 230.03(3). Obviously, then, there is a principal-agent relationship between the board and the superintendent. We have recognized *528 this relationship on at least two occasions, in which we have held that a school board may be held vicariously responsible for the unlawful acts of its subordinates. Columbia Cty. Bd., etc. v. Public Emp. Rel. Comm., 353 So.2d 127 (Fla. 1st DCA 1977); Zorick v. Tynes, 372 So.2d 133 (Fla. 1st DCA 1979).
Under the circumstances, I consider that the superintendent, acting as the agent of the board, had the authority both to suspend and to deny the employee all compensation pending the final retroactive action of the board. This conclusion becomes manifest upon reading Sections 230.33(7)(h) and 231.36(6) in pari materia. The former section permits the superintendent to suspend members of the instructional staff, and, "[w]hen authorized to do so, serve notice on the suspended member of the instructional staff of charges made against him and of the date of hearing." The above sentence interlocks with the following provisions from Section 231.36(6): "Whenever such charges are made against any such employee of the school board, the school board may suspend such person without pay." In my judgment, the above statutes, when jointly construed, divulge the legislative intent that the board is empowered to delegate to the superintendent the authority to suspend without pay once the latter files charges against an instructional employee.
To summarize, in my judgment the superintendent was acting as an agent for the school board and was exercising a power which could have been delegated lawfully to him by the board. And, if the power is one which can be delegated, it is axiomatic that the board's ratification may be retroactive to the date of suspension. See Fla. Jur., Agency and Employment, § 50, n. 9. Under the circumstances, I am of the belief that the school board could ratify the superintendent's suspension of Johnson without pay and make that action retroactive to December 22, 1978. I otherwise concur in all other portions of the majority's opinion.
NOTES
[1] 230.33 Duties and responsibilities of superintendent.  The superintendent shall exercise all powers and perform all duties listed below ...;

* * * * * *
(7) PERSONNEL.  Be responsible, as required herein, for directing the work of the personnel, subject to the requirements of chapter 231 and in addition he shall have the following duties:
* * * * * *
(h) Suspension and dismissal  Suspend members of the instructional staff and other school employees during emergencies for a period extending to and including the day of the next regular or special meeting of the school board and notify the school board immediately of such suspension. When authorized to do so, serve notice on the suspended member of the instructional staff of charges made against him and of the date of hearing. Recommend employees for dismissal under the terms prescribed herein.
[2] 231.36 Contracts with instructional staff. 

* * * * * *
(6) Any member of the district administrative or supervisory staff and any member of the instructional staff, including any principal, may be suspended or dismissed at any time during the school year; provided that the charges against him must be based on immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or conviction of any crime involving moral turpitude. Whenever such charges are made against any such employee of the school board, the school board may suspend such person without pay, but if charges are not sustained he shall be immediately reinstated, and his back salary shall be paid. In cases of suspension by the school board or by the superintendent, the school board shall determine upon the evidence submitted whether the charges have been sustained and, if said charges are sustained, either to dismiss said employee or fix the terms under which said employee may be reinstated....
[3] 230.23 Powers and duties of school board.  The school board, acting as a board, shall exercise all powers and perform all duties listed below:

* * * * * *
(5) PERSONNEL.  Designate positions to be filled, prescribe qualifications for those positions, and provide for the appointment, compensation, promotion, suspension, and dismissal of employees as follows, subject to the requirements of chapter 231:
* * * * * *
(g) Suspension and dismissal and return to annual contract status.  Suspend, dismiss, or return to annual contract members of the instructional staff and other school employees; provided, that no administrative assistant, supervisor, principal, teacher, or other member of the instructional staff may be discharged, removed or returned to annual contract except as provided in chapter 231.
[4] § 230.03(3), F.S.
[5] In Negrich v. Dade County Board of Public Instruction, 143 So.2d 498 (Fla. 3d DCA 1962), the School Board, after hearing, approved dismissal of a teacher retroactive to the date of the teacher's prior suspension by the superintendent. The teacher's dismissal was affirmed on appeal but that point was not expressly presented to or decided by the court.
[6] See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 676 (1956).
[7] Appellant points out that when a teacher has been suspended without pay such remains in effect until the teacher is exonerated. Even if the hearing results favorably to the teacher (so he says), such suspension remains in effect until final resolution in favor of the teacher after appeal to the State Board of Education, or subsequent appeal to the District Court, or even to the Supreme Court. While it appears to be true that if the final resolution is unfavorable to the teacher, his "termination" becomes effective from the date of the "suspension", it would appear that pay does not continue to be suspended pending the various levels of appeal if the initial hearing before the school board results in a finding that the charges are not sustained, because by statute the teacher must then be immediately reinstated with back pay. Thus, the risk of the teacher being without pay pending a series of appeals is a likelihood only in those instances where the Board finds the charges sustained and determines to dismiss the employee.
[8] Since a prompt hearing is in the interest of the suspended employee, he would necessarily have the right to waive any objection to a delay. The time periods involved in this case are neither condoned nor condemned as that is not an issue before us.
[9] Cf. Webster v. South Florida Water Management Dist., 367 So.2d 734 (Fla. 4th DCA 1979).